# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiff<br><br>vs.<br><br>LILY MANAGEMENT AND MARKETING COMPANY, LLC d/b/a USA VACATION STATION and WESTGATE RESORTS, LTD.<br><br>      Defendants | Case No. 2:14-cv-3866-DCN<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

The Plaintiff Mark Fitzhenry ("Plaintiff") individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of his counsel, and on information and belief as follows:

### NATURE OF ACTION

1. On February 28, 2007, Defendant Westgate Resorts, Ltd. ("Westgate") was sent a citation for the Federal Communications Commission regarding telemarketing activities where it was alleged to have contacted individuals who were on the Federal Do Not Call Registry.

2. On January 15, 2009, Westgate was sued by the Federal Trade Commission and the Department of Justice, who both alleged violations of the FTC's Telemarketing Sales Rule, an analogous statute to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

3. Four days later, the defendant Westgate stipulated to a judgment and permanent injunction that included a monetary payment of $900,000.00 and a permanent injunction.

4. Despite these regulatory actions, Westgate still employs a marketing system that relies on third parties telemarketing, and those third parties have again violated the provisions of the TCPA.

5. This case involves a scheme by Defendant Lily Management and Marketing Company, LLC, d/b/a USA Vacation Station, who marketed the services of Westgate through use of pre-recorded messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA").

6. Plaintiff brings this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of the Defendants.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

9. This Court has personal jurisdiction over Westgate as it (a) solicits guests to stay at its resorts in the state of South Carolina and (b) has multiple resorts in the state of South Carolina, as such, it has established minimum contacts showing they purposefully availed themselves to the resources and protection of the State of South Carolina.

10. This Court has personal jurisdiction over Lily Management and Marketing Company, LLC, d/b/a USA Vacation Station, because its conduct at issue in this case occurred, among other locations, in South Carolina, through the making of pre-recorded telemarketing calls.

11. Venue is proper in the United States District Court for the District of South Carolina because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction, as the Plaintiff received the illegal telemarketing calls that are the subject of this lawsuit in this District. *See* 28 U.S.C. § 1391.

## PARTIES

12. Plaintiff Mark Fitzhenry is, and at all times mentioned herein was, an individual citizen of the State of South Carolina, who resides in this District.

13. Defendant Westgate is a Florida limited partnership with its principal place of business at 5601 Windhover Drive, Orlando, Florida 32819. Defendant Westgate is a seller of goods or services, including timeshares and vacations at timeshare resorts, to consumers that has allowed telemarketers, such as the co-defendant, to call consumers to induce the purchase of goods or services from Westgate.

14. Defendant Lily Management and Marketing Company, LLC, d/b/a USA Vacation Station ("USA Vacation Station") is a professional organization with a principal place of business at 6236 Kingspointe Parkway, Suite 9 in Orlando, FL 32819. USA Vacation Station uses pre-recorded telemarketing messages to promote the goods and services of defendant Westgate.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.
>
> *Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

17.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

18.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

19.     USA Vacation Station made the autodialed and prerecorded message calls described herein "on behalf of" Westgate within the meaning of the 2008 FCC Declaratory Ruling.

20. On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[1]

21. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

22. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

23. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶ 46).

---

[1] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

24.     Westgate are legally responsible for ensuring that USA Vacation Station complied with the TCPA, even if Westgate did not themselves make the calls.

25.     Westgate knew that the USA Vacation Station was alleged to have violated the TCPA on Westgate' behalf and failed to take effective steps within their power to force the telemarketer to cease that conduct.

26.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

## FACTUAL ALLEGATIONS RELATING TO THE PLAINTIFF'S CALL

27.     Plaintiff Fitzhenry is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

28.     In September of 2014 the Plaintiff received a telephone call to his residential telephone line that he has had for more than 15 years, (843) 209-XXXX.

29.     When the phone was answered, a pre-recorded message played, that pre-recorded message was automated and stated

> Let the memories begin.  You have been selected for a magical Walt Disney World area holiday special.  Your claim number is 545.  To take advantage of this promotion, press 1 now.

30.     When Plaintiff spoke with a representative, that representative informed the Plaintiff that she was calling from the company USA Vacation Station, and gave a website of http://www.usavacationstation.com/, and a seller of travel registration number ST-38754.

31.     The Plaintiff also spoke with a manager named "Amber", and during their conversation "Amber" informed the Plaintiff that the company's legal name was Lily Management and Marketing Company, LLC, and that USA Vacation Station was "under" Lily Management.

32.     "Amber" also informed the Plaintiff that the company "represents" Westgate, and that they book stays for two Westgate properties, Westgate Lakes and Spa and Westgate Vacation Villas.

33.     USA Vacation Station has a contractual relationship with Westgate that allows them to both advertise Westgate properties and book vacations at the Westgate properties.

34.     "Amber" also verified that USA Vacation Station sent and managed the pre-recorded message that was delivered to the Plaintiff, informing the Plaintiff that they needed to have their "tech person" look into the message, because a few people had told her that the recorded message was hard to understand.

35.     Plaintiff did not provide prior express written consent to receive the pre-recorded phone call, and has not done business with either of the defendants.

**The Defendants' Marketing Scheme**

36.     Westgate relies on a series of third parties ("Westgate Brokers") to promote its goods or services.

37.     Westgate maintain interim control over its Brokers' actions, both as to telemarketing and other activities.

38.     In 2009, Westgate was sued by the Federal Trade Commission and the Department of Justice, who both alleged violations of the FTC's Telemarketing Sales Rule, an

analogous statute to the TCPA. *See United States of America v. Westgate Resorts, Ltd., et. al.,* United States District Court for the Middle District of Florida, Civil Action No. 09-cv-104.

39. Four days after the complaint was filed, Westgate stipulated to a judgment and permanent injunction that included a monetary payment of $900,000.00 and a permanent injunction.

40. The permanent injunction prevented Westgate from:

> [E]ngaging in, causing other persons to engage in, or assisting other persons to engage in, violations of the Telemarketing Sales Rule, including but not limited to initiating any outbound telephone call to a person's telephone number on the National Do Not Call Registry of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services.

41. Initiating a pre-recorded telemarketing call without a prior express written permission is a violation of the Telemarketing Sales Rule.

### **Vicarious Liability Under the FCC's Order**

42. The Federal Communication Commission concurs that sellers such as Westgate may not avoid liability by outsourcing telemarketing:

> Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶ 37 (FCC May 9, 2013) (internal citations omitted).

43. Under the standards outlined in the FCC's order and by other Courts interpreting that Order, Westgate is liable to the Plaintiff under the following theories:

    a.    Direct Liability
    b.    Actual Authority
    c.    Ratification
    d.    Apparent Authority

Each is discussed below.

### Direct Liability

44. Westgate actively participated in the telemarketing calls that are the subject of this case.

45. The call to the Plaintiff is an example of how. Although USA Vacation Station made the call and took the Plaintiff's information, Westgate itself participated in the call by setting the pricing guidelines and pre-qualifications for the promotion offered to the Plaintiff.

46. Had the Plaintiff accepted that offer, Westgate would have sold its resort services to him.

47. Each call that USA Vacation Station placed, regardless of how "far" the call recipient permitted the sales pitch to go, was intended by all parties involved to result in sales of Westgate' products and services.

### Actual Authority

48. With regard to torts committed by an agent, tort committed by an agent, the Restatement of Agency provides:

§ 7.04 Agent Acts With Actual Authority

A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and

(1) the agent's conduct is tortious, or

- 9 -

(2) the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

49. The purpose of Westgate's Brokers is to serve Westgate by booking vacations for consumers on behalf of Westgate.

50. Indeed, USA Vacation Station did this through the pre-recorded telemarketing alleged in this Complaint.

51. Westgate also directed the quality, timing, geographic location and volume of USA Vacation Station's bookings that it sent to them. In fact, as the Plaintiff was informed, USA Vacation Station only was allowed by Westgate to book vacations as two of its properties.

52. Both of these properties were located in the same geographic area as USA Vacation Station.

**Ratification**

53. In the alternative, Westgate repeatedly ratified USA Vacation Station's illegal marketing scheme by knowingly accepting the benefits of USA Vacation Station's activities when they accepted applications and customers from them.

54. Since at least January of 2009, Westgate has been on notice of its obligations to monitor and prevent third parties from violating federal telemarketing law when using telemarketing to promote its goods and services.

55. After being aware of the telemarketing practices used by third parties, Westgate continued to allow USA Vacation Station to telemarket its goods and services using pre-recorded messages.

56. In participating in these calls (through the issuance of criteria), Westgate manifested an intent to accept the benefit of USA Vacation Station's calling campaigns;

including calls that were made by USA Vacation Station on its behalf but that did not result in a booking.

57.     Because it accepted the calls' benefits from USA Vacation Station, including continued customers, Westgate cannot avoid the burden associated with their ratification.

58.     Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

> Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 *16, ¶ 34, fn 102.

59.     Westgate knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

60.     The benefits of the relationship Westgate requested from the FCC must be accompanied by the burden.[2]

---

[2] The FCC also emphasized in its Order that due to the behind-the-scenes nature of relationships between sellers and telemarketers, Courts should consider affording TCPA Plaintiff discovery to establish the basis for vicarious liability for a call which on its face promotes the seller's products or service: "At a minimum, evidence of these kinds of relationships—which consumers may acquire through discovery, if they are not independently privy to such information— should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *In*
*Footnote continued on next page*

**Apparent Authority**

61. Westgate gave their agents, including USA Vacation Station, substantial power to affect their legal relations with third parties, including with the Plaintiff and consumers generally.

62. Westgate cloaked their agents with apparent authority to enter into advertising arrangements on their behalf, including lead generation telemarketing which the Plaintiff received.

63. USA Vacation Station transferred customer information for the vacations that were booked directly to Westgate. Thus, USA Vacation Station has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. USA Vacation Station is an apparent agent of Westgate.

64. By hiring USA Vacation Station to make calls on behalf of its agents to book vacation, and giving them detailed information regarding the parameters of those bookings, Westgate "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

65. USA Vacation Station knew that its calls were resulting in sales of the Westgate products.

66. The services sold were being completed by Westgate themselves.

**CLASS ACTION ALLEGATIONS**

67. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

---

*Footnote continued from previous page*
*re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 * 15, ¶ 46 (FCC May 9, 2013). This complaint has been drafted without the benefit of discovery from Westgate.

68. Plaintiff bring this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

69. Plaintiff propose the following Class definition, subject to amendment as appropriate:

> All persons within the United States who received a non-emergency telephone call from USA Vacation Station, placed while acting on behalf of Westgate, through the use of an artificial or prerecorded voice within the four years prior to the filing of the Complaint in this action.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

70. Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

71. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believe Class members number, at minimum, in the thousands.

72. Plaintiff and all members of the Class have been harmed by the acts of the Defendants.

73. This Class Action Complaint seeks injunctive relief and money damages.

74. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

75. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

76. Further, the Class can be identified easily through records maintained by Westgate and/or their telemarketing agents.

77. There are well defined, nearly identical, questions of law and fact affecting all parties.

78. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

79. Such common questions of law and fact include, but are not limited to, the following:

   a. Whether USA Vacation Station, acting on behalf of Westgate, used an artificial or prerecorded voice in its non-emergency calls to Class members' telephones.

   b. Whether the Defendants can meet their burden of showing they obtained consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

   c. Whether the Defendants' conduct was knowing and/or willful;

   d. Whether the Defendants are liable for statutory damages; and

   e. Whether the Defendants should be enjoined from engaging in such conduct in the future.

80. Plaintiff will fairly and adequately represent and protect the interests of the Class.

81. Further, Plaintiff has no interests which are antagonistic to any member of the Class.

82. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

83. A class action is the superior method for the fair and efficient adjudication of this controversy.

84. Class wide relief is essential to compel the Defendants to comply with the TCPA.

85. The interest of the Class members in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

86. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

87. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

88. Moreover, on information and belief, Plaintiff allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

### NEGLIGENT VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

**(Against all Defendants)**

89. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

90. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

91. As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

92. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

93. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

**(Against all Defendants)**

94. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

95. The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

96. As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

97. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

98. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.     Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B.     As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b), Plaintiff seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a group;

C.     As a result of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiff seek for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a whole;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid jointly and severally by the Defendants as a whole;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.     Such other relief as the Court deems just and proper.

Dated:   October 3, 2014

                                                  s/ Lance S. Boozer
                                                  Lance S. Boozer (Fed ID# 10418) (SC Bar# 75803)

**PLAINTIFF'S COUNSEL:**

Lance S. Boozer
The Boozer Law Firm, LLC
807 Gervais Street
Suite 203
Columbia, SC 29201
Tele:  803-608-5543
Fax:   803-926-3463
lsb@boozerlawfirm.com

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net
*Subject to Pro Hac Vice*